The opinion of the court was delivered by
Breaux, J.
Plaintiffs brought suit to compel the defendants to pay them the sum of eightthousand nine hundred and three dollars for work done, they alleged, under the original contract, and for one hundred and five dollars for extra work under a supplemental contract, covering such work, and, in addition, for the sum of two thousand three hundred and twenty-one dollars and ninety-five cents, for extra work not covered by any contract. They also sue for an additional amount of ten thousand dollars, for damages caused by the defendants’ violation of the contract. By these contracts plaintiffs bound themselves to make additions, alterations and repairs to school houses, numbered twenty-one and twenty-three (in the city of New Orleans) , in conformity with the plans and specifications prepared by the Oity Engineer. The work, it was stipulated in the contract, was to be executed to the full satisfaction of this officer. A clause of the contract provided that in case of any omissions from, additions to, or alterations of, the plans and specifications, during the progress of the work, it would be supplied; that they, the additions and alterations, would be acceded to and made without any attempt, on the part of the plaintiffs, at showing that they were imposed in violation of the contract. It was also expressly agreed that no charge would be made for extra work, unless it was executed under written authority. The time fixed to complete and deliver the work was October 19, 1895. The plaintiffs bound themselves to pay ten dollars a day, after that date, for every day the work remained not completed.
On the 18th of November, the school authorities entered into-the possession of school building twenty-one, although the work on that building had not been quite completed. It was afterward finished by the commissioners themselves, at a cost of about seventy-five dollars.
The further complaint was urged in court by the defendants- *993 against the plaintiffs, that the material used was inferior in quality; that there were many unjustifiable delays on part of plaintiffs in matter of the work; that school building twenty-three was the only school building in Carrollton in which there are a large number of children attending the public schools; the parents were clamoring to send their children to school; to accommodate matters, the school authorities had the schools reopened in the body of the main building, which was not being repaired, but they were obliged to close them, for the reason that the incomplete state of the improvements rendered it impossible to continue with the school. On the 27th of November, 1895, the Mayor and Chairman of the Board of Commissioners of the McDonogh School Fund notified, in accordance with the direction of the board, the plaintiffs, that the contract was annulled. The commissioners took charge of the work and in eight weeks from the time they took charge the incomplete work was finished. One of the plaintiffs, as a witness, admitted that it would have taken thirty days for them to complete the work.
The defendants thus state their account:
Original contract of August 23, 1895. $8,903 00
Extra work, under contract of September 14,1895. 105 00
Total price agreed upon by plaintiffs and defendants. $9,008 00
Paid plaintiffs on account.$5,586 75
Paid plaintiffs unpaid labor bills. 478 15
Recorded liens, unpaid. 4,970 00
Paid cost of completing their contract. 4,935 00
Total. ■ 15,969 97
Deficit claimed by defendants. $6,961 97
The defendants also alleged, with reference to the publication of communication of the City Engineer to the Board of Oommissioners that it was “ privileged,” and only gave an account of the unsatisfactory condition of the plaintiffs’ work.
The judgment of the lower court rejected plaintiffs’ claim and dismissed the suit.
We inferred that the special claims for damages growing out of the annulment of the contract, and of preceding communications about the alleged failure of duty on the part of plaintiffs, are not insisted upon by them, and, therefore, we excluded all questions of damages from further consideration.
We also eliminated all questions in regard to extra work not covered by written agreement, for the reason that to allow for extra work *994 nofc endorsed on the contract by the officer selected by the defendant, would be contrary to the conditions of the contract, from which we again quote: “No charge to be made for extra work, unless-previously covered by a written instrument.”
The maxim, we think, applies: “No one can come against his-own deed.”
With reference to the extra work done, the witnesses greatly differed.
The Oity Engineer testified that there was scarcely a necessity for a plan of the elevation proper, as the idea was to carry out the wings so as to conform proportionately, as nearly as possible with the building then existing; that nothing was said at first about extra work; that in course of the work he agreed with one of the plaintiffs about extra work, and drafted a second contract to cover this work. It is the contract of September 14, 1895, to which reference has. already been made.
He did, however, prepare plans and specifications, in order to assist in carrying out the contract; that the changes made were not to the disadvantage of the builders and did not add to the repairs they had bound themselves to make under their contract.
This brings us to plaintiffs’ claim for work under the contract and to a consideration of the grounds defendants set up for annulling it.
After having read the testimony, we were, in the first place, impressed by the fact that plaintiffs were perhaps unfortunate in having bound themselves to make the alterations and repairs required on two buildings for one lump sum for all the work when defendants took charge of the work.
The first building was nearly completed when the defendants took charge of the work, but the second, No. 23, if we are to judge from a photographic view before us, was in quite an incomplete state, although, as early during the work as September 17, the plaintiff contractors were notified of the desire of the School Board to open the school' in due time, and to that end attention was directed to the possibility of their executing designated part of the work which would take only-little time, but which would enable that body to meet the- expectation of parents and pupils by opening the school in the unfinished building.
It appears that the board was disappointed. The work was not done in time and in compliance with the request made; besides there *995 is evidence showing that the brick and other materials used by these contractors were not such as they should have been.
But setting aside all the differences between the plaintiffs and the defendants save one, it is evident, in our judgment, that it of itself gave ground to annul the contract.
More than a month had elapsed since the date the work was to be delivered under the terms of the contract. Differences had arisen between the plaintiffs and the defendants. The delays and the inactivity in matter of the work had given rise to many complaints from the number interested in schools.
We are informed by the testimony that on the 25th of November everything was in an unsatisfactory condition; no one, while the witnesses were present on that day, was doing any work, a number of laborers were setting around, and others said that they desired to be paid before resuming work.
The Mayor, who was with the other officers at the building on the day just mentioned, states that the three walls of the addition were erected, ceiling joists were being hoisted up, but the "roof was not on, and in its incomplete state it could not be finished in less than five or six weeks.
In view of the facts, we are not inclined to question the right of the defendants to issue the order that was issued to the City Engineer to take charge of the work and complete it. It does, not appear that the plaintiffs offered the least objection to the order. The defendants took charge of the work without the least objection on the part of plaintiffs.
There was, we think, reason to bring matters to a close.
Moreover, under special articles one may cancel the contract with a builder. It is an exceptional right applying to special cases, but it is clearly expressed. It has been referred to as “novel in the provision of our law, thus giving a right to one of the parties to a contract to annul ad libitum.'’'’ Villalobos vs. Mooney, 2 La. 332. Nevertheless, the clear language of the Code has left no alternative save its enforcement. Goddart vs. Urquhart, 6 La. 658; Dufour vs. Janin, 8 La. 147; Loreau vs. Declouet, 3 La. 1; Joublanc vs. Daunoy, 6 La. 656; Crocker vs. Caldwell, 5 An. 220.
The contract was at an end after the defendant had given the required notice.
*996 It remains for us to determine whether the defendants are indebted to the plaintiffs in any balance for work performed.
In our view whether the contract was annulled because the defendants had sufficient cause to annul it, or because defendants chose to avail themselves of the provisions of Art. 2765 of the Civil Code, without reference to any cause, the contractor should receive compensation for the value of his material and for his labor up to the date his contract is canceled. We applied ourselves to the task of establishing the amount. In the first place we took up for consideration the proposition of plaintiffs’ counsel that the value of the alterations and repairs, on each building was about equal, or four thousand four hundred and fifty-one dollars and fifty cents for each.
We inferred that the work on building twenty-one was of greater value. From the specifications we gather that a portion of the existing side walls were taken down in order to extend the wings. Foundations were laid for these wings; new supports, consisting of cast-iron columns resting on brick foundations were provided, also pilasters against.the wall with the usual brick foundation. The roof was a mansard, covered with slate. The contract included the brick, the lumber and the painting and all work needful to complete the building. The plan of the front elevation of itself suggested work réquiring skill.
We thought that the work and the material on building twenty-three, was not as valuable. Be this as it may, we grant that each was about of equal value.
After having deducted the amount claimed for the first building, less the amount paid by the city to complete it, of the amount paid and claims timely recorded, there remained a sum large enough to pay for the plaintiff’s material and labor on the last, i. e., on building twenty-three.
Adding the amount the defendants paid to complete the work to the amount paid by them to the plaintiffs, it showed an expenditure much larger than the amount which the defendants would have had to pay, if plaintiffs had completed their work under the contract. We have not found of record any evidence of the value of the work on this building. No inventory was made by plaintiffs at the time of work done, and no attempt was made during the trial to prove by experts the value of work and material at the date the contract was annulled. As to the latter we are not led to infer that any remained which proved a loss for plaintiffs.
*997 We, therefore, felt justified, on the basis before stated, of work and material of about equal value on each, in the conclusion that the defendants were not indebted in an additional amount. The work of the defendants to complete the repairs was necessary, also the materials were necessary and the amounts expended for these reas - onable; at any rate, the plaintiff did not make the least offer to prove the contrary.
If we were to assume that one-half of the work had been done on the second building (twenty-three) at the date that defendant took charge, there would remain an amount sufficient from balances and sums before stated to compensate the plaintiff.
Moreover, the evidence shows that the repairs made by the defendant, due by the plaintiff in order for them to recover the whole amount as per contract, cost much more than the amount it required to complete the work.
The rule of law which we are compelled to apply in this case is an exception to the principle that contracts can be revoked only by the common accord of the parties to it.
Baudry-Laeantinerie, Vol. 3, p. 448, said: “ Mais P exception est facile a justifier, puisque celui, contre la volonté duquel la résiliation a lieu, non seulement est indemnisé de toute la perte que lui cause l’inexéeution du contrat, mais obtient en ofitre tout le bénéfice que lui aurait procuré l’exécution.”
In our judgment the indemnity before indicated was all that could be reasonably expected for material and labor performed.
Plaintiffs claimed for extra work and offered evidence to prove their claim. The officer selected by the plaintiffs and the defendants to supervise the work and see to its proper execution testified, with reference to extra work: “As to alterations at No. 23, there are none whatever to my knowledge.”
If there was extra work performed it was not authorized in writing by the corporation. The contract was left to bidders. We are not at liberty to change clearly expressed language contained in the contract drawn in accordance with the terms and conditions of the adjudication.
Plaintiffs, in special allegations of their petition, claim the value of certain tools, wheelbarrows, shovels, picks, which they used in performing their work under their contract, laid at seventy-five dollars.
The supervising agent of the defendant testified that he knew *998 nothing of this property and was never called upon to deliver it; if there was such property, it is on the premises. The plaintiffs are entitled to the tools they left on the place, or their value. In the present condition of that claim we do not think we would be justified in rendering a judgment for their value. We, however, reserve to them the right to call for a return of these working tools, and in case they are not returned, to recover their value in a separate suit.
It is therefore ordered, adjudged and decreed that the judgment appealed from is affirmed at appellants’ costs, with reservation of the right just stated.