FOSSIER v. KNIGHT MOTORS CO., INC.

(March 24, 1930. Opinion and Decree.)

McGiehan, Strauch & Gardiner, of New Orleans, attorneys for plaintiff, appellee.

Monroe & Lemann, and Nicholas Callan, of New Orleans, attorneys for defendant, appellant.

JANVIER, J. The principal issue involved here is one of fact: Was a written contract of employment subsequently modified by oral agreement of the parties?

Together with this issue of fact, we find that we are again asked to consider a well-settled question of law: May parties introduce evidence for the purpose of showing a subsequent verbal abrogation or modification of a written contract?

This latter question, we thought, had been definitely answered, and we are therefore somewhat surprised to see it again seriously submitted for determination.

So far as the question of law is concerned, we are unable to add anything to what we said in Harvey vs. Mouncou, 3 La. App. 231, in the syllabus of which we find the following:

"Parol evidence cannot be admitted to vary the terms of a written contract, but a subsequent oral agreement altering, waiving, discharging or otherwise novating a prior transaction cannot be excluded because of the prior transaction having been reduced to writing."

To the end that the authorities on which the decision in that case was based may again be brought to the attention of those members of the bar who are interested, we will once more list them.

In Wigmore, vol. 5, verbo "Parole Evidence Rule," p. 330, is found:

"In particular any subsequent agreement waiving, discharging or otherwise novating a prior transaction is not excluded by reason of the prior transaction having been reduced to writing."

In this state the rule has been firmly established as a result of the following decisions: Page vs. Nicholson & Co., 27 La. Ann. 116; Monarch vs. Board of Commissioners of McDonogh School Fund of City of N. O., 49 La. Ann. 991, 22 So. 259; Crook vs. Tensas Basin Levee District, 51 La. Ann. 286, 25 So. 88; Brink vs. Bartlett, 105 La. 336, 29 So. 958; Wellman vs. Smith, 114 La. 230, 38 So. 151; Selby vs. City of New Orleans, 119 La. 900, 44 So. 722; Queensborough Land Co. vs. Cazeaux, 136 La. 724, 67 So. 641, L. R. A. 1916B, 1201, Ann. Cas. 1916D, 1248; O'Leary vs. Board of Port Commissioners, Port of N. O., 150 La. 649, 91 So. 139.

That the doctrine is well recognized in the federal courts and in the courts of the other states of the Union becomes apparent from a perusal of the decisions of those courts. As illustrative, we cite those decisions from which, in Harvey vs. Mouncou, we quoted: James Reilly Repair & Supply Co. vs. Smith (C. C. A.) 177 F. 168; Theis vs. Svoboda, 166 Ill. App. 20; McGowan vs. Gate City Malt Co., 89 Neb. 10, 130 N. W. 965; Derrico vs. Muller (Sup.) 142 N. Y. S. 479; Pierce vs. Powers, 180 Ill. App. 687; Becker vs. Becker, 250 Ill. 117, 95 N. E. 70, Ann. Cas. 1912B, 275.

Since oral evidence is admissible to show subsequent oral modification or abrogation of a written contract, the question we are now called on to determine is whether or not, in the case before us, the preponderance of the evidence sustains the claim of defendant that there was such an oral modification.

Knight Motors Company, Inc., was a corporation owned entirely by John Stewart, Sr., but managed for Stewart by W. D. Rollins, Jr., as president and general manager. Rollins' authority was limited, and he testified that he had no right to bind the company without the full authority of Stewart. Theodore Fossier, Jr., plaintiff, a man of considerable experience in the sale of automobiles, was engaged by Knight Motors Company, Inc., under a written contract reading as follows:

"New Orleans, La., Sept. 30, 1927.
"Agreement entered into between Knight Motors Company, Inc., hereinafter designated as the party of the first part, and Theo. Fossier, Jr., hereinafter designated as the party of the second part, whereby the party of the first part agrees to pay to the party of the second part a salary of $350.00 (Three Hundred Fifty Dollars) a month, payable $175.00 on the fifteenth and $175.00 on the first of each month, and a flat commission of 3 (three) per cent on the net volume of sales; this net volume to be computed at the end of each month. In consideration whereof, the party of the second part agrees to devote his time and efforts exclusively to the sale of the automobiles merchandised by the party of the first part, and to furnish his own transportation in the prosecution of this sales work.

"This agreement becomes operative on October 3, 1927, and is to be binding and effective for a period of 180 (one hundred eighty) days from said date of October 3, 1927.

"Intention on the part of either of the parties to this agreement not to renew same after date of expiration, as above set forth, shall be stated in writing at least 10 (ten) days before expiration date."

Signed: "Knight Motors Company, Inc., by W. D. Rollins, Jr., President and General Manager. Theo. Fossier, Jr. Witness: R. P. Bernard."

During the original term of the contract, the specified salary was regularly paid and, at the end of each month, Fossier, in addition to his salary, called for and re-

ceived the amounts due him as commissions on sales consummated by him. In fairness to plaintiff, it is proper to state that he at no time claimed that he was entitled to commissions on all sales made by the company, but conceded that the intention of the parties in this regard was that he should receive commissions on such sales only as were effected by him.

After the expiration of the original term of the contract, and during the subsequent reconductions thereof, Fossier continued to draw his regular monthly amount, to-wit, $350, one-half on the first of the month and one-half on the fifteenth, but did not continue to call for, nor to receive, any amounts representing commissions on sales.

This condition continued until some time near the end of January, 1929, at which time Fossier was notified, first orally and then in writing, that his services were no longer required.

Thereupon Fossier brought this suit, which has for its object the collection of salary from the time of his discharge, on January 21, 1929, to March 26, 1929, and of the commissions to which he claims he is entitled at 3 per cent on the sales, and which commissions, it is conceded, he has not been paid.

Defendant contends that the original contract was modified by mutual consent as of March 30, 1928, or thereabout, and that from the time of the modification it was understood that Fossier would no longer receive commissions on sales, nor a salary of $350 each month, but, instead, would be entitled to 20 per cent of the net profits of the concern and would be allowed a drawing account of $350 each month, and that the amounts drawn on this account should be charged against his share of the profits.

Conceding for the moment that the evidence supports defendant's contention that the written contract was modified, we do not find any claim that the modification included a right in defendant to cancel the contract at any time other than as specified in the original written document. In other words, as we view defendant's contention, it amounts to no more than a claim that the agreement to pay 3 per cent commission on sales was withdrawn.

That it owed plaintiff salary, or that it owed him the right to draw for the last half of January, is conceded, and that amount, to-wit, $175, has been paid, and we find nothing in either the written contract or in the defendant's interpretation of the oral modification thereof with reference to the right to terminate the contract at will. Since, then, the contract would not have terminated until March 26, 1929, salary, or drawing account, or whatever it may be called, was due until that time. It is true that the oral modification contended for contained a stipulation that the drawing account should be charged against the 20 per cent of the net profit to which plaintiff was entitled, and it is equally true that the record convinces us that at no time was there any profit, but it is very evident that the defendant interpreted even the oral contract to mean that plaintiff was to receive the amount of his drawing account in all events, and the interpretation which it itself placed upon its own contract will be accepted as the correct one, where that interpretation was contrary to its interests. We thus feel that, although, for the reasons we will hereafter assign, the contract was orally modified, nevertheless that modification consisted of no more than a stipulation that the 3 per cent commission should no longer be paid, and that, if there were profits, plaintiff should be entitled to 20

per cent thereof, but that, in all events, he should draw $350 per month.

Our conclusion, that there was an agreement to modify the original contract, results from our view that the failure of plaintiff to ask for, or to cause to be entered on the books, the commissions which he now claims, is very strong evidence of the fact that he himself knew that he was no longer entitled to those commissions. For the first six months he regularly demanded and regularly received payments on account of the sales made by him. For the next nine months he at no time demanded commissions and he admits that he did not know whether any commissions had been credited to him on the books, and this in spite of the fact that he had ready access to those books and to some extent seems to have assisted in making other entries therein.

His denial that any agreement of modification was entered into is at least counterbalanced by the testimony of Stewart, Jr., Stewart, Sr., having died in the meantime, and of the other witnesses. But, without the very significant failure to demand the commissions, we do not feel that the evidence would preponderate either way. However, considering the facts to which we have referred, we can reach no other conclusion.

It is said that plaintiff would have been most unwise to accept an agreement to share in the profits in view of the fact that there had never been any profits, and that probably there never would be any. It should be borne in mind, however, that Stewart could have dispensed entirely with the services of Fossier and Fossier may have thought it best to accept employment on the basis Stewart was willing to offer, rather than to give up the position altogether.

The district court rendered judgment for salary amounting to $645.31 and for commissions amounting to $731.95, a total of $1,377.60. We believe that the commissions are not due and the judgment should, therefore, be reduced to $645.31, with interest as allowed by the district court.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the amount thereof to $645.31, and, as thus amended, affirmed. Costs of this court to be paid by appellee.